# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

CANDACE LAPLANT-TURNER,     )
                          )
        Plaintiff,        )
                          )
        vs.            )      Case No. 4:23-cv-00042-GAF
                          )
HY-VEE, INC.,         )
                          )
        Defendant.     )

## SUGGESTIONS IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

In this single-count case, Plaintiff claims Hy-Vee discriminated against her based on her age when it failed to promote her to a Floral Manager position at the Belton store in 2021. In reality, the undisputed evidence illustrates that when the hiring manager (Whitney Larson) received applications for that position, she contacted the Store Director of the store where Plaintiff had been working for the last three years to obtain his input on whether Plaintiff had the skills and abilities to make a good Floral Manager. The Store Director informed Ms. Larson that Plaintiff was an excellent designer but that he did not think she was a good candidate for a Floral Manager position because she struggled with good communications, which led to customer complaints and trouble getting along with some of the other employees.

Ms. Larson also spoke with the Floral Supervisor, who oversees the Floral Operations in the region to obtain her feedback regarding Plaintiff. The Floral Supervisor had similar feedback, indicating Plaintiff excelled at floral design but tended to be negative and struggled to problem solve and deal with conflict.

Ultimately, Ms. Larson decided to promote an employee (RaeJean Robertson) who already worked in the Belton Floral Department. Ms. Larson was familiar with Ms. Robertson's positive

attitude and strong work ethic. In addition, Ms. Robertson was already familiar with the Belton store and, specifically, the Floral Department at the Belton store. It is true that Ms. Robertson was significantly younger than Plaintiff, but the law is clear that the mere fact that the successful candidate was younger is not sufficient to establish a claim of age discrimination. Particularly in the context of this case – where Ms. Larson has a history of hiring and promoting employees who are similar in age to Plaintiff – the undisputed evidence simply does not support a claim for age discrimination.

For these reasons, as more fully described below, Hy-Vee is entitled to judgment as a matter of law as to Plaintiff's single-count age discrimination claim.

**TABLE OF CONTENTS**

STATEMENT OF UNCONTROVERTED FACTS ................................................................ 1

    I.      BACKGROUND INFORMATION ABOUT PLAINTIFF, AND PLAINTIFF'S PRE-HY-VEE EXPERIENCE. ........................................ 1

    II.     HY-VEE'S BUSINESS MODEL AND ORGANIZATIONAL STRUCTURE. ...................................................................................... 1

    III.    THE REQUIREMENTS OF THE FLORAL MANAGER POSITION. ............... 2

    IV.    PLAINTIFF'S EMPLOYMENT AT HY-VEE. ...................................... 3

        A.      DUTIES PLAINTIFF PERFORMED DURING HER EMPLOYMENT WITH HY-VEE. ........................................... 4

        B.      KORY ROBINSON'S OBSERVATIONS OF PLAINTIFF. ................... 5

        C.      KAITLYN SEHGAL'S OBSERVATIONS OF PLAINTIFF. ................. 6

    V.     RAEJEAN ROBERTSON. ............................................................ 7

    VI.    PLAINTIFF'S APPLICATIONS BEFORE 2021. .................................. 8

    VII.   PLAINTIFF'S APPLICATIONS AT THE BELTON STORE. ...................... 9

    VIII.  PLAINTIFF'S APPLICATIONS AFTER THE BELTON STORE. ................. 13

    IX.    OTHER RELEVANT HIRING DECISIONS. ...................................... 15

    X.     PLAINTIFF'S CHARGE OF DISCRIMINATION AND CLAIM. ................. 15

ARGUMENT ............................................................................................ 17

    I.      SUMMARY JUDGMENT STANDARD ............................................ 17

    II.     PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES ............................................................................ 18

        A.      THE ONLY CLAIM PLAINTIFF EVEN ARGUABLY EXHAUSTED IS THE CLAIM RELATED TO HER APPLICATIONS FOR THE BELTON FLORAL MANAGER POSITION IN 2021. ................................................ 18

        B.      PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO HER ONLY POTENTIAL TIMELY CLAIMS. ......................................................... 20

**TABLE OF CONTENTS**

III. PLAINTIFF CANNOT ESTABLISH HER SINGLE-COUNT AGE DISCRIMINATION CLAIM. .............................................................................. 20

    A. HY-VEE'S LEGITIMATE, NON-DISCRIMINATORY REASONS. ........................................................................................ 21

    B. PLAINTIFF CANNOT SHOW THAT HY-VEE'S STATED REASONS WERE PRETEXTUAL. ...................................................... 23

CONCLUSION.................................................................................................................. 25

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................17

*Burrow v. Boeing Co.*,
No. 4:09cv2073TCM, 2011 U.S. Dist. LEXIS 45439 (Mo. E.D. April 27,
2011) ......................................................................................................................18

*Calvin v. City of Laurie*,
No. 2:11-CV-04124, 2012 U.S. Dist. LEXIS 164800 (W.D. Mo. Nov. 19,
2012) ......................................................................................................................17

*Carraher v. Target Corp.*,
503 F.3d 714 (8th Cir. 2007) ..................................................................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................17

*Davidson & Assocs. v. Jung*
422 F.3d 630 (8th Cir. 2005) ..................................................................................17

*Dorsey v. Pinnacle Automation Co.*,
278 F.3d 830 ....................................................................................................18, 24

*Duffy v. Wolle*,
123 F.3d 1026 (8th Cir. 1997) ................................................................................24

*E.E.O.C. v. CRST Van Expedited, Inc.*,
679 F.3d 657 (8th Cir. 2012) ..................................................................................23

*Gibson v. American Greetings Corp.*,
670 F.3d 844 (8th Cir. 2012) ..................................................................................17

*Jorgensen v. Modern Woodmen of America*,
761 F.2d 502 (8th Cir. 1985) ..................................................................................24

*Kirklin v. Joshen Paper & Packaging of Ark. Co.*,
*911 F.3d 530 (8th Cir. 2018)*..................................................................................19

*Kohrt v. MidAmerican Energy Co.*,
364 F.3d 894 (8th Cir. 2004) ..................................................................................24

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..................................................................................................20

*McKay v. U.S. Dept. of Transp.*,
  340 F3d 695 (8th Cir. 2003) ...............................................................................24

*Ojukwu v. Astrue*,
  No. 10-0216-CV-W-DGK, 2011 WL 4067471 (W.D. Mo. Sep. 13, 2011) ...........................19

*Ottoman v. City of Independence, Mo.*,
  341 F.3d 751 (8th Cir. 2003) ...................................................................21, 22, 23

*Parisi v. Boeing Co.*,
  400 F.3d 583 (8th Cir. 2005) ...................................................................18, 19, 20

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000).............................................................................................18

*Thomas v. Corwin*,
  483 F.3d 516 (8th Cir. 2007) ............................................................................17, 24

*Torgerson v. City of Rochester*,
  643 F.3d 1031 (8th Cir. 2011) .....................................................................17, 18, 24

*Trammel v. Simmons First Bank of Searcy*,
  345 F.3d 611 (8th Cir. 2003) ............................................................................20, 21

*Tusing v. Des Moines Indep. Cmty. Sch. Dist.*,
  639 F.3d 507 (8th Cir. 2011) ...............................................................................24

*Wallace v. DTG Operations, Inc.*,
  442 F.3d 1112 (8th Cir. 2006) ...............................................................................23

*Wedow v. City of Kansas*,
  442 F.3d 661 (8th Cir. 2006) ...............................................................................19

*Wilson v. Int'l Bus. Mach. Corp.*,
  62 F.3d 237 (8th Cir. 1995) ...............................................................................17

*Yates v. Rexton, Inc.*,
  267 F.3d 793 (8th Cir. 2001) ...............................................................................21

**Statutes**

29 U.S.C. § 626(d) ...............................................................................................18

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................17

Fed. R. Civ. P. 56(c)(1)........................................................................................17

**STATEMENT OF UNCONTROVERTED FACTS**[1]

**I.      Background Information about Plaintiff, and Plaintiff's Pre-Hy-Vee Experience.**

1.      Plaintiff's was born in 1961. Ex. 1, Pltf's depo. 8:17-18.

2.      Before working for Hy-Vee, Plaintiff worked at a grocery store originally called Larry's IGA and later called Apple Market. Ex. 1, Pltf's depo. 35:1-11.

3.      Plaintiff worked there for a total of 21 years. She began working in the Bakery. After approximately six years, she moved to the Floral Department. For the last ten years of her employment at Larry's IGA/Apple Market, Plaintiff was the manager of the Floral Department. Ex. 1, Pltf's depo. 35:1-19, 124:21-24.

4.      In that role, Plaintiff handled the ordering, plants, flowers, inventory, billing, designing, and anything else that needed to be done. Ex. 1, Pltf's depo. 35:20-36:1.

5.      She also oversaw two designers and two clerks. Ex. 1, Pltf's depo. 36:2-7.

**II.      Hy-Vee's Business Model and Organizational Structure.**

6.      During the relevant period of time, each Hy-Vee store had a Store Director or District Store Director, who oversaw all of the operations at each store. Most stores also had a Store Manager, which is the position directly below the Store Director. Most stores (including the stores where Plaintiff worked) also had "Managers Of," who were upper level managers in the store. For example, the Manager of Perishables oversaw the perishable departments in the store, and the Manager of Store Operations oversaw the front end of the store. Ex. 2, Larson depo. 29:18-31:6; Ex. 3, Larson Decl. ¶ 4.

---

[1] For purposes of this motion only, Hy-Vee assumes the truth of Plaintiff's testimony and sets forth the "facts" in the light most favorable to Plaintiff. In actuality, Hy-Vee disputes many of the "facts" asserted by Plaintiff, but assumes their truth only for purposes of summary judgment.

1

7.      Each store also has department managers, which includes a manager of the Floral Department ("Floral Manager"). Ex. 2, Larson depo. 30:25-31:6; Ex. 3, Larson Decl. ¶ 5.

8.      Hy-Vee also employs department supervisors. Department supervisors, such as the Floral Supervisor, oversee the operations of Floral Departments of numerous stores in a geographical region. Ex. 3, Larson Decl. ¶ 6.

9.      Floral Supervisors do not directly manage employees, but they work with the Floral Departments in their regions and often become familiar with the Floral Department employees in those stores. Ex. 3, Larson Decl. ¶ 7.

10.     From July 2018 to January 1, 2022, Kaitlyn Sehgal was the Floral Supervisor for the Southern Region, which included about 35 stores and included all of the stores in Kansas and Missouri. Ex. 4, Sehgal depo. 16:8-19:4.[2]

11.     As the Floral Supervisor, Ms. Sehgal helped train new managers, stepped in when there were floral emergencies, helped and supported the Floral Departments in her stores, answered questions, and aided with staffing situations. Ex. 4, Sehgal depo. 16:14-17:2.

12.     She also oversaw remodels, ordered equipment for those remodels, helped to set up remodels, and participated in grand openings. Ex. 4, Sehgal depo. 17:2-5.

III.    **The Requirements of the Floral Manager Position.**

13.     Plaintiff agrees that the Floral Manager job description accurately describes the position. Ex. 1, Pltf's depo. 74:12-15; Ex. 6, Depo. Ex. 10.

14.     The first duty listed in the job description reads:

> Maintains a positive attitude; creates an atmosphere of friendliness and fun through flexibility and teamwork. Generates a friendly atmosphere by encouraging employees to greet and speak to

---

[2] Ms. Sehgal left Hy-Vee in September 2022 and does not believe she was treated fairly at the end of her employment. Ex. 4, Sehgal depo. 19:21-31:1, 60:10-12. Ms. Sehgal's year of birth is 1991. Ex. 10, Hunt Decl. ¶ 11.

2

customers; providing prompt, courteous, and efficient service to customers and sets a good example.

Ex. 6, Depo. Ex. 10.

15. The education or experience preferred for the position is a high school education or three years of related work experience. Ex. 6.

16. Candidates must also have the ability to solve practical problems, to handle variables with limited standardization, and to interpret instructions. There are also physical requirements of the position. Ex. 6.

17. According to Plaintiff, the main differences between the designer position and the manager position are that the manager: (1) handles the ordering; (2) handles the scheduling; (3) is responsible for inventory; (4) has overall responsibility for profit and loss; (5) is responsible for coaching and disciplining employees; and (6) must maintain a general awareness of how the department is doing and motivate employees to do things the Hy-Vee way. Ex. 1, Pltf's depo. 74:16-75:15.

18. Plaintiff agrees it is important to be good with people – both customers and employees. She also agrees it is important to be flexible. Ex. 1, Pltf's depo. 75:20-76:4.

19. Compared to the store where Plaintiff was a Floral Manager (before she worked at Hy-Vee), Hy-Vee Floral Departments handle significantly more business with approximately the same number of employees. Ex. 1, Pltf's depo. 36:15-37:7.

## IV. Plaintiff's Employment at Hy-Vee.

20. Plaintiff began working for Hy-Vee in March 2012 as a part-time designer at the Lee's Summit #2 store. Ex. 1, Pltf's depo. 41:16-20, 56:20-23.

3

21. Plaintiff had applied to work at three Hy-Vee stores: Lee's Summit #1, Lee's Summit #2, and Belton. She interviewed with and received offers from both Lee's Summit #2 and Belton. Ex. 1, Pltf's depo. 50:16-17, 51:7-8.

22. Plaintiff chose to go to Lee's Summit #1, rather than Belton, because the Floral Manager at the Belton store (at the time) did nothing but talk the store down whereas the Floral Manager at Lee's Summit #1 talked the store up. Plaintiff decided she would rather work at a store where the Floral Manager was positive about the store. Ex. 1, Pltf's depo. 50:18-51:2.

23. Plaintiff stayed at Lee's Summit #2 as a floral designer until November 2018. Ex. 1, Pltf's depo. 53:2-59:5; Ex. 7, Depo. Ex. 7.

24. Plaintiff moved to Lee's Summit #1 in November 2018 and continued working there as a designer until she resigned in July 2023. Ex. 1, Pltf's depo. 26:3-18, 53:2-8, 62:7-9, 64:10-13; Ex. 7, Depo. Ex. 7.

25. Plaintiff signed a Friendliness and Customer Service Contract when she was hired and agrees that friendliness and customer service are both emphasized at Hy-Vee. Ex. 1, Pltf's depo. 48:22-49:6; Ex.8, Depo. Ex. 5. She further agrees these are both important qualities in a manager. *Id.* at 49:7-9.

**A.      Duties Plaintiff Performed During Her Employment With Hy-Vee.**

26. During her Hy-Vee employment, Plaintiff ordered product when a need arose, but she was never the person who regularly ordered product. Ex. 1, Pltf's depo. 65:4-66:8, 69:3-14, 126:5-12.

27. Plaintiff handled the inventory on one occasion when she worked at Lee's Summit #2 (between 2012 and 2018). Otherwise, during her Hy-Vee employment, she sometimes helped with counting, but did not handle the other duties associated with inventory. Ex. 1, Pltf's depo. 126:13-23.

4

28.     Those additional duties include making sure the costs are up to date for all product on the inventory sheets, making sure the information in the system matches, making sure all invoices are paid and linked to the product, and keeping a sales to purchase ledger. Ex. 2, Larson depo. 97:18-98:13.

29.     Plaintiff never handled any of the scheduling during her Hy-Vee employment. Ex. 1, Pltf's depo. 66:12-14, 69:15-18, 127:8-12.

30.     Plaintiff helped to train clerks how to design but otherwise did not handle any employee hiring, coaching, or discipline. Ex. 1, Pltf's depo. 66:15-67:3, 69:19-70:19, 126:24-127:7.

31.     Plaintiff was never responsible for the profit and loss of the department. Ex. 1, Pltf's depo. 127:13-19.

32.     Plaintiff did not handle any other duties she would consider to be management duties. Ex. 1, Pltf's depo. 70:20-24.

**B.     Kory Robinson's Observations of Plaintiff.**

33.     Kory Robinson became the Store Director at Lee's Summit #1 in October 2019 and held that position until April 2022. Ex. 5, Robinson Decl. ¶3.

34.     During his time as Store Director at Lee's Summit #1, Mr. Robinson interacted with Plaintiff on a regular basis. He also received feedback from Plaintiff's manager. Ex. 5, Robinson Decl. ¶ 4.

35.     Plaintiff agrees that Mr. Robinson was one of the people who was in the best position to observe Plaintiff's performance, abilities and opportunities. Ex. 1, Pltf's depo. 22:22-24:10.

36.     In Mr. Robinson's observation, Plaintiff was an excellent designer, but she often struggled with interpersonal communications. Ex. 5, Robinson Decl. ¶ 5. Plaintiff tended to resist changes in the store and had trouble handling curveballs. *Id.* She often bickered with her manager and had a tendency to be abrasive. *Id.*

5

37.     Mr. Robinson also received (directly or indirectly) a fair number of customer complaints about Plaintiff's communication style. Ex. 5, Robinson Decl. ¶ 6.

38.     For example, in January 2020, a customer sent an email to Hy-Vee's Customer Care department. The customer reported that Plaintiff had treated his fiancé rudely on more than one occasion. He stated his fiancé had recently called the store because they had planned to use the store to provide the flowers for their wedding, but Plaintiff was so rude, they decided to call a different store and planned never to shop at Lee's Summit #1 again. Ex. 9, Depo. Ex. 11; Ex. 5, Robinson Decl. ¶ 7.

**C.      Kaitlyn Sehgal's Observations of Plaintiff.**

39.     As noted above, Kaitlyn Sehgal was the Floral Supervisor over the Kansas City stores in from July 2018 to January 1, 2022. Ex. 4, Sehgal depo. 16:8-19:4.

40.     Ms. Sehgal worked with Plaintiff when Plaintiff worked at Lee's Summit #2 and that store was undergoing a remodel. Ex. 4, Sehgal depo. 33:19-35:6.

41.     Ms. Sehgal worked at the Lee's Summit #2 store frequently during the remodel. Ex. 4, Sehgal depo. 33:25-34:3.

42.     Ms. Sehgal also had interactions with Plaintiff when Plaintiff worked at the Lee's Summit #1 store. Ex. 5, Robinson Decl. ¶ 9.

43.     Before becoming the Floral Supervisor, Ms. Sehgal had been a Floral Manager for approximately four years at two different stores, so she had a good understanding of the qualities and skills required to be a Floral Manager. Ex. 4, Sehgal depo. 14:7-16:13, 44:7-15.

44.     Based on her observations, Ms. Sehgal concluded Plaintiff did not have the qualifications to successfully perform the job duties of a Floral Manager. Ex. 4, Sehgal depo. 44:16-21.

6

45. The remodel at Lee's Summit #2 necessitated significant change. They had new structures, new routines, new procedures within the floral department, a new ordering line, new product lines, and new pricing systems. The whole department was redone, not just physically, but pricing-wise, and staff-wise. Ex. 4, Sehgal depo. 45:2-8.

46. In this context, Ms. Sehgal's interactions with Plaintiff were negative. Plaintiff frequently pushed back on new policies and procedures by saying things like, "Well, that's just stupid. I'm not doing it that way." Ex. 4, Sehgal depo. 45: 9-20.

47. Based on many interactions Ms. Sehgal had with Plaintiff, Ms. Sehgal concluded that Plaintiff did not have the skills needed to merchandise, to plan for sales increases, to find ways to move through items that may not have been selling very well, and thinking outside the box to make sure that the shrink was not high. Ex. 4, Sehgal depo. 50:5-15.

48. Ms. Sehgal's conclusion was based on her observation that Plaintiff was not able to effectively problem solve, to deal with conflict, or to handle hard situations that arise when you are a Floral Manager. Ex. 4, Sehgal depo. 50:17-25, 54:10-20.

49. In her interactions with Plaintiff, Plaintiff did not portray the skills and assets needed to handle those types of situations. Ex. 4, Sehgal depo. 50:25-51:2.

## V. Raejean Robertson.

50. RaeJean Robertson's year of birth is 2000. Ex. 10, Hunt Decl. ¶ 4.

51. Ms. Robertson began working at the Belton store on June 11, 2019, and transferred to the Floral Department in October 2019. Ex. 10, Hunt Decl. ¶ 4.

52. As such, when Ms. Larson arrived at the Belton store in August 2020, Ms. Robertson was already working in the Floral Department and remained in that position at the time she interviewed for the Floral Manager position in June 2021. Ex. 3, Larson Decl. ¶8.

7

53. Ms. Robertson was reliable, friendly, and industrious. She exuded a positive energy and worked well with the other employees in the department. She was also already familiar with the Belton Floral Department. Ex. 3, Larson Decl. ¶ 9.

54. Ms. Sehgal worked with Raejean Robertson through the remodel at the Belton store. Ex. 4, Sehgal depo. 56:2-7.

55. In Ms. Sehgal's observation, Ms. Robertson was a good communicator and very hard working. Ex. 4, Sehgal depo. 56:12-20.

56. Ms. Sehgal found Ms. Robertson to be a really big help during the transition from the old Belton Floral Department location to the temporary location. She helped Ms. Sehgal problem solve and provided helpful feedback on issues that arose during the transitional time. Ex. 4, Sehgal depo. 56:12-24.

## VI.     Plaintiff's Applications Before 2021.

57. In March or April 2018, Plaintiff applied for the Floral Manager position at Lee's Summit #2. Ex. 1, Pltf's depo. 59:6-60:3, 71:11-16.

58. She interviewed with Store Director Jeff Sesker for that position, but Mr. Sesker hired an employee named Mandy for the position. Mandy was in her 30s and had been the Assistant Floral Manager at the Liberty store. Ex. 1, Pltf's depo. 59:12-25, 72:22-73:12.

59. Mr. Sesker told Plaintiff he chose Mandy because she had been through a management training program. In addition, the Floral Supervisor at the time had been Mr. Sesker's Floral Manager in the past, and she recommended Mandy. Ex. 1, Pltf's depo. 60:4-18.

60. Other than that, Plaintiff does not know anything about Mandy's background or qualifications. Ex. 1, Pltf's depo. 73:5-7.

8

61.     In August 2018 Plaintiff applied for the Floral Manager position at Lee's Summit #1 and interviewed with Brad Walters, who was the Store Director at Lee's Summit #1 at the time. Ex. 1, Pltf's depo. 61:12-17, 71:17-21.

62.     Mr. Walters hired Katie Stover for that position because Ms. Stover had worked in the Floral Department at that same store (Lee's Summit #1) for several years, and Mr. Walters wanted to give Ms. Stover a chance. Ex. 1, Pltf's depo. 61:18-62:6.

63.     Plaintiff does not believe Mr. Walters' decision had anything to do with age. Ex. 1, Pltf's depo. 61:16-62:6

## VII.     Plaintiff's Applications at the Belton Store.

64.     Whitney Larson became the Store Director at the Belton store in August 2020. She held that position until she became a District Store Director over two stores in Independence in January 2022. Ex. 2, Larson depo. 31:22-32:5, 33:13-15; Ex. 3, Larson Decl. ¶ 2, 8.

65.     On February 25, 2021, Ms. Larson posted the Floral Manager position for the Belton store (Job ID 303158) after the previous Floral Manager at the store left. Ex. 11, Depo. Ex. 14 (HV 000595); Ex. 2, Larson depo. 74:15-17, 77:2-8.

66.     In response to the posting, seven individuals applied. Those applicants included Plaintiff, Shaylan Mitchell, and Chaundra Scott Keearns. Ex. 11; Ex. 2, Larson depo. 105:6-12, 74:15-75:13.

67.     Shalyan Mitchell had been the Floral Manager at the Jefferson City Hy-Vee for approximately two-and-a-half years. She also had other managerial and floral retail experience. Ex. 12, Depo. Ex. 13 at HV 00062; Ex. 3, Larson Decl. ¶¶ 10-12.

9

68. Chaundra Scott Keearns was a Sales Manager at Aaron's but had previously held Floral Manager positions at two different grocery stores. Ex. 12, Depo. Ex. 13 at HV 00068; Ex. 3, Larson Decl. ¶ 13.

69. After reviewing the applications, Ms. Larson reached out to the Store Director at the Jefferson City store (Rod Dolph) to get information about Ms. Mitchell. She also reached out to the Store Director at Lee's Summit #1 (Kory Robinson) to get information about Plaintiff. Ex. 2, Larson depo. 68:15-25, 69:19-70:3; Ex. 3, Larson Decl. ¶ 14; Ex. 5, Robinson Decl. ¶ 10.

70. Mr. Dolph had very positive feedback about Ms. Mitchell and indicated she was an excellent Floral Manager. Ex. 3, Larson Decl. ¶ 15.

71. Mr. Robinson told Ms. Larson that Plaintiff was a very good designer and had good design experience but that her people skills were not great as far as dealing with customers and fellow employees. Ex. 2, Larson depo. 69:1-6; Ex. 3, Larson Dep. ¶ 16; Ex. 5, Robinson Decl. ¶¶ 12-13.

72. Ms. Sehgal provided positive feedback on Ms. Mitchell. Ex. 3, Larson Decl. ¶ 17.

73. Mr. Robinson also indicated Plaintiff had received different customer complaints, and she didn't necessarily work well with others. Ex. 2, Larson depo. 69:7-11; Ex. 3, Larson Decl. ¶ 16.

74. Ms. Larson also spoke with Kaitlyn Sehgal about both Ms. Mitchell and Plaintiff. Ex. 2, Larson depo. 68:15-21, 72:22-25; Ex. 4, Sehgal depo. 53:15-25.

75. Ms. Sehgal told Ms. Larson that Plaintiff did not have all the qualities and skills to be able to fulfill that job successfully, in Ms. Sehgal's opinion. Ex. 4, Sehgal depo. 53:15-54:9; Ex. 2, Larson depo. 70:12-18.

76. Based on this feedback, Ms. Larson interviewed Ms. Mitchell. After the interview, Ms. Larson offered the position to Ms. Mitchell, but Ms. Mitchell ultimately declined the offer, indicating

she decided she did not want to move. Ex. 2, Larson depo. 82:18-20, 78:3-79:2; Ex. 3, Larson Decl. ¶¶ 14-18.

77.     As a result, on March 10, 2021, Ms. Larson re-posted the position (Job ID 304985). Ex. 11; Ex. 2, Larson depo. 79:13-16.

78.     Four people applied for the position based on this posting, including Plaintiff and Chaundra Scott Keearns. Ex. 11; Ex. 2, Larson depo. 79:17-25.

79.     Ms. Larson interviewed Ms. Scott Keearns and offered her the position. Ex. 2, Larson depo. 80:17-81:3, 83:8-13, 105:20-24.

80.     Ms. Larson did not interview Plaintiff at that time based on the feedback she had received from Mr. Robinson and Ms. Sehgal. Ex. 3, Larson Decl. ¶¶ 14-20.

81.     Ms. Scott Keearns accepted the position and began as the Floral Manager at the Belton store on March 25, 2021. Ex. 13, Keearns Employment History; Ex. 10, Hunt Decl. ¶ 5.

82.     Ms. Scott Keearns' year of birth 1975. Ex. 13.

83.     Unfortunately, Ms. Scott Keearns did not last long in the position. She stopped coming to work, and her employment was officially terminated on May 21, 2021. Ex. 13; Ex. 10, Hunt Decl. ¶ 6; Ex. 2, Larson depo. 81:4-16.

84.     As a result, Ms. Larson posted the position again (Job ID 319187 and 322304).[3] Ex. 11; Ex. 2, Larson depo. 81:13-16.

85.     In the first set of applicants (for Job ID 319187), Plaintiff was the only one who had any Floral experience. Ex. 14, HV 00086-00101; Ex. 3, Larson Decl. ¶ 21-22.

---

[3] The position was posted on both May 21, 2021 and June 6, 2021. Ex. 11.

11

86.     Two people who applied in response to Job ID 322304, RaeJean Robertson and Vickie Conroy. Both had Floral experience, but no management experience. Ex. 15, HV 00596-604; Ex. 2, Larson depo. 119:8-11; Ex. 3, Larson Decl. ¶¶ 21-23.

87.     After receiving the applications, Ms. Larson spoke with Ms. Sehgal about Ms. Robertson. Ex. 4, Sehgal depo. 55:16-56:1; Ex. 3, Larson Decl. ¶¶ 21-24.

88.     Ms. Sehgal told Ms. Larson she thought Ms. Robertson would make a good Floral Manager and provided feedback consistent with Ms. Larson's own observations of Ms. Robertson. Ex. 4, Sehgal depo. 56:8-11, 57:22-25; Ex. 3, Larson Decl. ¶ 24.

89.     As a result, Ms. Larson decided to interview Ms. Robertson. Ex. 3, Larson Decl. ¶ 25.

90.     Due to the overall weakness of the applicant pool, Ms. Larson decided to also interview Plaintiff, despite the concerning feedback she had received about her. Ex. 2, Larson depo. 104:22-107:1; Ex. 3, Larson Decl. ¶¶ 14, 16-17, 26.

91.     According to Plaintiff, the interview only lasted about ten minutes. Ms. Larson asked the basic questions about Plaintiff's experience. She also discussed what she expected out of a manager. Ex. 1, Pltf's depo. 82:25-83:13.

92.     Plaintiff described her experience in high school, at Tobler's Flowers, at Food Barn and at IGA/Apple Market. Ex. 1, Pltf's depo. 83:14-84:1.

93.     The only other thing Plaintiff remembers about the interview is Ms. Larson saying, "As you can see by my plant sitting in the corner, I'm not very good with plants., but I was on vacation and nobody watered it, so I guess I need to water it." Plaintiff responded, "I suggest you throw it in the trash because it's not coming back." Ex. 1, Pltf's depo. 85:14-23.[4]

---

[4] Ms. Larson testified that Plaintiff's responses during the interview were negative and critical of her current and prior manager. She also testified Plaintiff was not able to articulate prior management experience. Ex. 2, Larson depo. 93:11-102:7. For purposes of this Motion, however, Hy-Vee assumes Plaintiff's testimony is true.

94. During Ms. Larson's interview of Ms. Robertson, Ms. Robertson discussed her love of the department and her desire to lead it. She discussed how eager she was to learn and that she was willing to do whatever was needed to make the department succeed. Ex. 3, Larson Decl. ¶ 28.

95. Ms. Robertson was upbeat and positive throughout the interview. She discussed her current knowledge of the department and her desire to grow and make a career with Hy-Vee. Ex. 3, Larson Decl. ¶ 29.

96. Based on all the information she had about Plaintiff and Ms. Robertson, Ms. Larson decided to offer the position to Ms. Robertson, which she accepted. Ex. 3, Larson Decl. ¶¶ 8-9, 16-17, 27- 32.

97. Plaintiff believes Ms. Larson chose Ms. Robertson over her because Ms. Robertson was young, and Ms. Larson could mold her. Ex. 1, Pltf's depo. 146:3-18.

98. The only reason Plaintive believes that is that Ms. Robertson was hired over her. Ex. 1, Pltf's depo. 146:14-22.

## VIII. Plaintiff's Applications After the Belton Store.

99. In November 2021, Plaintiff applied for a Floral Manager position at the Blue Springs store. Ex. 1, Pltf's depo. 72:4-9.

100. Plaintiff was interviewed by the Human Resources Manager and the Store Director at the Blue Springs store. Ex. 1, Pltf's depo. 100:6-18.

101. When Plaintiff was on her way home from the interview, the Human Resources Manager called her and offered her the job. Ex. 1, Pltf's depo. 101:8-17.

102. The Human Resources Manager initially offered Plaintiff $19 per hour. Plaintiff said she would not take the job for that amount of money. In response the Human Resources Manager said

13

she could go to $20 per hour, but she would have to talk to the Store Director in order to offer anything higher than that. Ex. 1, Pltf's depo. 101:18-24.

103.    Plaintiff responded by saying the Human Resources manager would have to talk to the Store Director because Plaintiff would not take it for less than $25 per hour. Ex. 1, Pltf's depo. 101:18-24.

104.    The previous Floral Manager at the Blue Springs store made $20 per hour when she left. Ex. 1, Pltf's depo. 99:4-13, 100:19-101:2.

105.    The next day, Plaintiff got an email saying she did not get the job. Ex. 1, Pltf's depo. 101:25-102:7.

106.    In May 2022, Plaintiff applied for the Floral Manager position at the Belton store but did not receive an interview. Ex. 1, Pltf's depo. 72:10-12, 112:3-6.

107.    Caitlin Blevins was hired for that position. Ex. 1, Pltf's depo. 112:9-11. Plaintiff is not familiar with Ms. Blevins' work history or qualifications except that one of a Store Director told her she worked at a different Hy-Vee store and had been an assistant manager for two years. Ex. 1, Pltf's depo. 112:14-21.

108.    Plaintiff does not know who made the hiring decision and does not know whether it had anything to do with her age, but testified Ms. Blevins is younger than she is. Ex. 1, Pltf's depo. 113:2-7.

109.    In December 2022, Plaintiff applied for a Floral Manager position at Lee's Summit #2 but was not interviewed. Ex. 1, Pltf's depo. 72:13-16, 113:8-11.

110.    Tamme Williams was hired for that position. Ex. 10, Hunt Decl. ¶ 7. Ms. Williams' year of birth is 1964. *Id.*

111. Ms. Williams had 43 years of experience in Floral retail. At the time she applied, she had been the manager of a Floral Department at a different grocery store for four years, and she had decades of managerial experience at Floral shops and/or in Floral departments over the years. Ex. 16, Depo. Ex. 17, Hunt Decl. ¶ 8.

112. Plaintiff does not know who made that hiring decision. Ex. 1, Pltf's depo. 113:8-114:13.

## IX.    Other Relevant Hiring Decisions.

113. During her time as the Belton Store Director, Ms. Larson promoted Pam Lee to be the Aisles On Line Manager at the Belton store. Ex. 3, Larson Decl. ¶ 33; Ex. 17, Lee Employment History (HV 00631-00632).

114. Ms. Lee's year of birth is 1961. Ex. 17; Ex. 10, Hunt Decl. ¶ 9.

115. Ms. Larson also hired Marty Krause to be the Produce Manager at the Belton store. Mr. Krause had previously been the Produce Manager at the Raytown store. Ex. 3, Larson Decl. ¶ 34; Ex. 18, Krause Employment History (HV 00629-00630).

116. Mr. Krause's year of birth is 1962. Ex. 18; Ex. 10, Hunt Decl. ¶ 9.

117. In addition, after becoming the District Store Director over the two Independence stores, Ms. Larson promoted Mark Weston to the Floral Manager position at Independence #1. Ex. 3, Larson Decl. ¶ 35; Ex. 19, Weston Employment History (HV 00627-00628).

118. Mr. Weston's year of birth is 1968. Ex. 19; Ex. 10, Hunt Decl. ¶ 9.

## X.    Plaintiff's Charge of Discrimination and Claim.

119. Plaintiff filed a charge of discrimination on September 21, 2021, and has never filed another charge of discrimination. Ex. 20, Depo. Ex. 22 (Charge); Ex. 21, Depo. Ex. 23 (Petition) at ¶9.; Ex. 22, (Pltf's Answer to Interrogatory No. 2).

120.    In her charge of discrimination, Plaintiff alleges she was routinely passed over for promotions at Hy-Vee, but the only specific position she references is a Floral Manager position at Lee's Summit #1 in June 2021. Ex. 20. Specifically, the charge states:

> As recent as June 2021, when the Hy-Vee store located at 301 NE Rice Rd, Lee's Summit, MO 64086 where CP works (store No. 01380-01 Lee's Summit) decided to hire a full-time manager for the floral department, CP (as she had done at least twice before) submitted her application for the position. Many of her co-workers believed CP would get the position.

Ex. 20.

121.    Lee's Summit #1 did not hire a Floral Manager in June 2021. Ex. 1, Pltf's depo. 129:3-18. In fact, Katie Stover was hired as the Floral Manager in 2018 and still holds that position. Ex. 1, Pltf's depo. 129:19-21; Ex. 5, Robinson Decl. ¶ 3.

122.    As discussed above, the place Plaintiff applied for a manager position in June 2021 was at the Belton store. Ex. 1, Pltf's depo. 130:7-9.

123.    The only Hy-Vee employee to whom Plaintiff ever spoke about her belief she had suffered age discrimination was Katie Stover. Ex. 1, Pltf's depo. 138:25-139:3, 45:16-19.

124.    Plaintiff complained of age discrimination to Ms. Stover twice. The first time was the day *after* she learned she did not receive the Floral Manager position at the Belton store. Ex. 1, Pltf's depo. 44:17-45:6.

125.    Plaintiff cannot recall when she made the second complaint, but it was sometime after that, and it related to the same position (Floral Manager at Belton). Ex. 1, Pltf's depo. 45:7-15.

**ARGUMENT**

**I.      SUMMARY JUDGMENT STANDARD**

The standards for summary judgment are well-settled. Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). Once the movant demonstrates the absence of a genuine issue of fact, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012); Rule 56(c)(1). Summary judgment is not a disfavored procedural shortcut, but is instead "a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011) (citation omitted).

A party opposing summary judgment may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Davidson & Assocs. v. Jung* 422 F.3d 630, 638 (8th Cir. 2005). Likewise, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526–27 (8th Cir. 2007); *Calvin v. City of Laurie*, No. 2:11-CV-04124, 2012 U.S. Dist. LEXIS 164800, *23 (W.D. Mo. Nov. 19, 2012) (granting summary judgment where plaintiffs relied on "pure speculation" that protected factor played a role in employer's decision to terminate).

17

Courts should not "treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). As the Eighth Circuit has confirmed, "there is no 'discrimination case exception' to the application of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011); *Burrow v. Boeing Co.*, No. 4:09cv2073TCM, 2011 U.S. Dist. LEXIS 45439, *17 (Mo. E.D. April 27, 2011) ("[W]hile employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment, and there is no separate summary judgment standard for employment discrimination cases."). It is a "useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Id.*

## II.     PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A.     <u>The Only Claim Plaintiff Even Arguably Exhausted Is The Claim Related to Her Applications For the Belton Floral Manager Position in 2021.</u>

Before bringing an age discrimination claim under the ADEA, plaintiffs must first exhaust all available administrative remedies. 29 U.S.C. § 626(d); *see also Parisi v. Boeing Co.,* 400 F.3d 583 (8th Cir. 2005)). Otherwise, the district court is deprived of jurisdiction to hear an ADEA lawsuit. *Id.* Specifically, "[t]he ADEA requires the filing of an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the act of discrimination." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 835 (citing 29 U.S.C.§ 626(d)(2)).

Here, Plaintiff filed her charge on September 21, 2021, and has never filed another charge. SOF ¶¶ 119-120. As such, the only position for which she could have timely exhausted her administrative remedies are the 2021 positions at the Belton store. SOF ¶¶ 119-120. The Lee's Summit Floral Manager positions were filled in 2018, more than two years before Plaintiff filed her

charge.[5] SOF ¶ 121. Although Plaintiff checked the "continuing violation" box on her charge of discrimination, each hiring decision is a discrete act, requiring its own charge. "Failure to promote is a routine personnel decision, and each act of failing to promote is treated as a separate act of discrimination rather than a single ongoing act." *Ojukwu v. Astrue*, No. 10-0216-CV-W-DGK, 2011 WL 4067471, at *4 (W.D. Mo. Sep. 13, 2011) (granting summary judgment on ADEA failure to promote claim where plaintiff failed to exhaust administrative remedies) (citing *Betz v. Chertoff*, 578 F.3d 929, 937-938 (8th Cir. 2009)); *see also Kirklin v. Joshen Paper & Packaging of Ark. Co.*, 911 F.3d 530, 535 (8th Cir. 2018) (rejecting plaintiff's argument that his employer's failure to promote him was a continuing violation because every alleged failure to promote decision is a "discrete discriminatory act" that is "not actionable if time-barred, even when they are related to acts alleged in timely filed charges.").[6]

Similarly, Plaintiff did not exhaust her administrative remedies regarding the May 2022 position at Belton or the December 2022 position at Lee's Summit #2 because those decisions occurred after Plaintiff filed her Charge, and she never filed another charge or amended her charge to add new claims. *See Parisi*, 400 F.3d 583 (affirming summary judgment in employer's favor where the plaintiff did not amend his original charge to exhaust subsequent arising allegations); *see also Wedow v. City of Kansas*, 442 F.3d 661 (8th Cir. 2006) (recognizing that courts require new or amended charges for each subsequent alleged discrete act of discrimination).

Accordingly, the only positions for which Plaintiff even arguably timely exhausted her administrative remedies are the 2021 Belton floral manager positions.[7]

---

[5] In addition, Plaintiff does not believe the Lee's Summit #2 hiring decision had anything to do with age. SOF ¶¶ 61-63.

[6] Consistent with this notion, Plaintiff's Charge alleges that "Discrimination took Place" from December 2020 through June 2021." *See* Ex. 20.

[7] Plaintiff checked the box for retaliation on her charge, but she did not include a retaliation claim in her Complaint (ECF No. 1-1). *See* Ex. 21. In addition, she admits she did not complain of discrimination until after she learned she was not chosen for the June 2021 Belton position, so that promotional decision could not have been retaliatory. *See*

**B.**     <u>**Plaintiff failed to exhaust administrative remedies as to her only potential timely claims.**</u>

Although Plaintiff could have timely exhausted her administrative remedies related to the 2021 Belton positions, her charge of discrimination does not identify those positions. Rather, the only position mentioned in Plaintiff's Charge is a June 2021 position at Lee's Summit #1. SOF ¶¶ 119-20; Ex. 20. As discussed above, Lee's Summit #1 did not even have an open Floral Manager position in 2021. SOF ¶ 121. Nonetheless, Plaintiff references *only* a position at Lee's Summit #1. SOF ¶ 120; Ex. 20. Although courts "will liberally construe an administrative charge for exhaustion of remedies purposes," the Eighth Circuit has recognized that "there is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made." *Parisi*, 400 F.3d at 585 (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996)).

Because Plaintiff did not identify the only positions for which she could have timely filed a Charge of Discrimination, she has failed to exhaust her administrative remedies altogether.

**III.     PLAINTIFF CANNOT ESTABLISH HER SINGLE-COUNT AGE DISCRIMINATION CLAIM.**

Even if Plaintiff had exhausted her administrative remedies related to her 2021 applications for the Floral Manager position at the Belton store, her age discrimination claim fails as a matter of law.

Where, as here, there is no direct evidence of discrimination, the Court employs the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 614 (8th Cir. 2003). Under that framework, Plaintiff must first establish a *prima facie* case of age discrimination. *Id*. Hy-Vee

---

SOF ¶¶ 124-125. Finally, although Plaintiff testified she believed she suffered retaliation after she filed her charge of discrimination, she did not amend her charge to add any such claim (and did not assert one in her Complaint).

then must articulate a legitimate, non-discriminatory reason for its decision. *Id*. at 614-15. The burden then shifts back to Plaintiff to show that the Hy-Vee's stated reason for its decision is pretextual. *Id*. at 615. "The burden of persuasion remains with Plaintiff throughout." *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir. 2001) (citation omitted).

For purposes of this Motion, Hy-Vee does not dispute that Plaintiff can establish a *prima facie* case, but the undisputed evidence demonstrates that Hy-Vee has provided legitimate, non-discriminatory reasons for its decisions, and Plaintiff cannot prove pretext.

### A. Hy-Vee's Legitimate, Non-Discriminatory Reasons.

Hy-Vee's burden to set forth a legitimate, non-discriminatory reason is "exceedingly light; [Hy-Vee] must merely proffer [nonage] based reasons, not prove them." *See e.g., Ottoman v. City of Independence, Mo.*, 341 F.3d 751 (8th Cir. 2003) (citation and quotation marks omitted).

As discussed above, Hy-Vee first posted the Belton Floral Manager position in early 2021. SOF ¶ 65. In response, among other applicants, Plaintiff and Shaylan Mitchell applied. SOF ¶¶ 65-66. Ms. Mitchell was the current Floral Manager at the Jefferson City Hy-Vee. SOF ¶¶ 66-67, 69. Ms. Larson sought feedback on both Plaintiff and Ms. Mitchell. SOF ¶¶ 65-66, 69. She received favorable feedback on Ms. Mitchell from both the Store Director at the Jefferson City store and the Floral supervisor. SOF ¶¶ 70, 72. Mr. Dolph told Ms. Larson that Ms. Mitchell was an excellent Floral Manager (a position she was already performing). SOF ¶ 70. By contrast, Plaintiff's Store Director and Floral supervisor both indicated they did not believe Plaintiff had the skills to be a successful Floral Manager. SOF ¶¶ 73-75. Accordingly, Ms. Larson chose to make the offer to Ms. Mitchell. SOF ¶¶ 69-76.

When Ms. Mitchell declined the offer, Hy-Vee reposted the position. SOF ¶¶ 76-77. One of the applicants for the position was Chaundra Scott Keearns. SOF ¶¶ 77-78. Ms. Scott Keearns was

21

a Sales Manager at Aaron's at the time but had previously held Floral Manager positions at two different grocery stores. SOF ¶ 68. Because Ms. Larson had a very qualified candidate in Ms. Scott Keearns and had received concerning feedback about Plaintiff's likely success in the position – from two people who had recently worked with Plaintiff on a regular basis – Ms. Larson did not interview Plaintiff and ultimately offered Ms. Scott Keearns the position. SOF ¶¶ 71, 73, 75, 79-80

After Ms. Scott Keearns left Hy-Vee, Hy-Vee posted the position again. SOF ¶¶ 81, 83-84. In response to the first posting, the only applicant with floral experience was Plaintiff. SOF ¶¶ 84-85. In response to the second posting, two candidates had floral experience but no management experience. SOF ¶ 86. One of the candidates who applied (RaeJean Roberson) was a current employee in the Floral Department at the Belton store. SOF ¶¶ 51-52. Ms. Larson had personal experience with Ms. Robertson and found her to be reliable, friendly, and industrious. SOF ¶ 53. She exuded positive energy, worked well with the other employees in the Belton Floral Department, and was already familiar with the department. *Id*.

Kaitlyn Sehgal, the Floral Supervisor at the time, had also worked with Ms. Robertson through a remodel and found her to be a good communicator and very hard working. SOF ¶¶ 54-56. As such, Ms. Larson sought feedback on Ms. Robertson from Ms. Sehgal. SOF ¶ 87. Ms. Sehgal told Ms. Larson she thought Ms. Robertson would make a good Floral Manager and provided positive feedback consistent with Ms. Larson's own observations. SOF ¶¶ 53-56, 88.

Ultimately, Ms. Larson decided to interview both Plaintiff and Ms. Robertson. SOF ¶¶ 88-90. During her interview, Ms. Larson asked the basic questions about Plaintiff's experience. SOF ¶ 91. She also discussed what she expected out of a manager. *Id*. Plaintiff described her prior job experience in high school at Tobler's Flower's, Food Barn, and IGA/Apple Market. SOF ¶¶ 91-92. The only other thing Plaintiff remembers about the interview is Ms. Larson saying, "As you can see by my plant sitting

22

in the corner, I'm not very good with plants., but I was on vacation and nobody watered it, so I guess I need to water it." To which Plaintiff responded, "I suggest you throw it in the trash because it's not coming back." SOF ¶ 93.

During Ms. Larson's interview of Ms. Robertson, Ms. Robertson discussed her love of the department and her desire to lead it. SOF ¶ 94. She discussed how eager she was to learn and that she was willing to do whatever was needed to make the department succeed. *Id*. Ms. Robertson was upbeat and positive throughout the interview. SOF ¶ 95. She discussed her current knowledge of the department and her desire to grow and make a career with Hy-Vee. *Id*.

Based on the feedback she received about Plaintiff and Ms. Robertson, the candidate interviews, as well as her own observations of each applicant, Ms. Larson offered the June 2021 Belton floral manager position to Ms. Robertson, and Ms. Robertson accepted. SOF ¶¶ 52-56, 69, 71,73-75, 87-88, 91-96 Accordingly, Hy-Vee had legitimate, non-discriminatory reasons for its decisions.

## B. <u>Plaintiff Cannot Show That Hy-Vee's Stated Reasons Were Pretextual.</u>

To establish pretext, Plaintiff must show that Hy-Vee's proffered legitimate reasons for its actions are "unworthy of credence" because they have "no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006) *abrogated on other grounds by Togerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) and *Smith v. Allen Health Syst., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)). Plaintiff cannot establish a pretext based on "mere speculation." *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 694 (8th Cir. 2012). Rather, Plaintiff must both discredit Hy-Vee's proffered reasons and prove those reasons are a pretext for age discrimination." *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 898 (8th Cir. 2004) (citation and quotation marks omitted).

It is axiomatic that identifying the strengths that constitute the best qualified applicant is a role best left to employers. The Eighth Circuit has often noted, "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Duffy v. Wolle*, 123 F.3d 1026, 1038 (8th Cir. 1997), *abrogated on other grounds by Torgerson*, 643 F.3d 1031. Indeed, the Eighth Circuit has long held that "[t]he ADEA is not intended to be used as a means of reviewing the propriety of a[n] [employer's] business decision." *Jorgensen v. Modern Woodmen of America*, 761 F.2d 502, 505 (8th Cir. 1985) (citation omitted). Further, "[i]n considering the pretext issue, [the Court's] inquiry is limited to whether the employer gave an honest explanation of its behavior, not whether its action was wise, fair, or correct." *McKay v. U.S. Dept. of Transp.*, 340 F3d 695, 700 (8th Cir. 2003) (affirming district court's grant of summary judgment in favor of employer where there was no evidence employer's explanation for promotional decision was dishonest or otherwise pretextual) (citation and quotation marks omitted); *see also Dorsey*, 278 F.3d 830, (8th Cir. 2002) (affirming grant of summary judgment in favor of employer where plaintiffs failed show that the employer's preferred reasons for its promotional decisions were untrue or that the true reasons for not promoting the plaintiffs was discriminatory).

Plaintiff makes much of the fact that Ms. Robertson is significantly younger than she is. The courts have repeatedly held, however, that this fact alone is insufficient to give rise to an inference that age was a determinative factor. *See Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516-517 (8th Cir. 2011); *Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007) (being "replaced by someone substantially younger . . . possesses insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against"); *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007) (pretext for age discrimination was not established where the only evidence was that plaintiff was

24

replaced by someone younger).

The undisputed evidence establishes that Ms. Larson relied on information from her colleagues who had worked with Plaintiff (as well as information about Ms. Mitchell and Ms. Robertson). SOF ¶¶ 39-49, 54-56, 69-76, 87-89, 94-96. She also relied on her own observations of an employee who was already working in the department, as well as Ms. Robertson's performance in the interview. SOF ¶¶ 51-53, 94-96. The evidence is devoid of any suggestion that the conclusions of Ms. Larson, Ms. Sehgal, and Mr. Robinson had anything whatsoever to do with age. Indeed, the evidence is undisputed that Ms. Larson promoted and/or hired employees whose age was similar to Plaintiffs for other positions in the same store and in the same timeframe. SOF ¶¶ 113-116. In addition, Ms. Larson promoted an employee similar to Plaintiff's age to the Floral Manager position at a different store when Ms. Larson began overseeing that store. SOF ¶ 117-18.

In short, the evidence does not support a conclusion that Plaintiff's age was the determining factor in Ms. Larson's decision. In fact, the evidence does not support a conclusion that Plaintiff's age played any role at all. Accordingly, and consistent with well-settled law in this Circuit, Plaintiff cannot show that Hy-Vee's stated reasons for its decisions was pretextual. As a result, Hy-Vee is entitled to judgment as a matter of law.

<u>**CONCLUSION**</u>

Even viewing the evidence in the light most favorable to Plaintiff, she cannot establish that she timely exhausted her claims. In addition, Plaintiff cannot show that Hy-Vee's reasons for its decisions were somehow a pretext for age discrimination. Accordingly, Hy-Vee is entitled to summary judgment on Plaintiff's sole claim of age discrimination claim and respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.

25

Respectfully submitted,

*/s/ Jeannie M. DeVeney*
Jeannie M. DeVeney, MO #46885
Direct: 816.627.4405
E-Fax: 816.817.1453
jdeveney@littler.com
LaceShionna N. Cline, MO #68000
Direct: 816.627.4407
E-Fax: 816.817.6543
lcline@littler.com
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO 64106

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which sent electronic notice to the following counsel of record:

Marcos A. Barbosa
MABLAW-KC
1100 Main Street, Suite 1650
Kansas City, MO 64105
Marcos.barbosa@mablawkc.com

ATTORNEYS FOR PLAINTIFF

*/s/ Jeannie M. DeVeney*
ATTORNEY FOR DEFENDANT

26