# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

CANDACE LAPLANT-TURNER, )
)
Plaintiff, )
)
vs. ) Case No. 4:23-cv-00042-GAF
)
HY-VEE, INC., )
)
Defendant. )

## DECLARATION OF WHITNEY LARSON

I, Whitney Larson, do hereby declare and state as follows:

1. I am older than the age of 18, am competent to make this Declaration. The facts included in this Declaration are based on my personal knowledge and/or the records of Hy-Vee, of which I am a custodian.

2. Since January 2022, I have been a District Store Director for Hy-Vee and oversee all operations at the two Hy-Vee stores known as Independence #1 and Independence #2.

3. When Candace LaPlant-Turner applied for the Floral Manager position at the Belton Store, I was the Store Director at the Belton store and made the hiring decisions for the open Floral Manager positions in 2021.

4. Hy-Vee made an organizational structure change in early 2020. Since that time, each store has had a Store Director or District Store Director, who oversees all of the operations at each store. Most stores also have a Store Manager, which is the position directly below the Store Director. Most stores (including Lee's Summit #1) also have "Managers Of," who are upper level managers in the store. For example, the Manager of Perishables oversees the perishable departments in the store, and the Manager of Store Operations oversees the front end of the store.

5. Each store also has department managers, which includes a manager of the Floral

1

Department ("Floral Manager").

6. Hy-Vee also employs department supervisors. Department supervisors, such as the Floral Supervisor, oversee the operations of Floral Departments in numerous stores in a defined geographical area.

7. Floral Supervisors do not directly manage employees, but they work with the Floral Departments in their regions and often become familiar with the Floral Department employees in those stores.

8. I became the Store Director at the Belton store in October 2020. When I took that position, RaeJean Robertson was already working in the Floral Department and remained in that position at the time she interviewed for the Floral Manager position in June 2021.

9. Ms. Robertson was reliable, friendly, and industrious. She exuded a positive energy and worked well with the other employees in the department. She was also already familiar with the Belton Floral Department.

10. The Floral Manager position at the Belton store first became open in early 2021. When I first posted the position, Shaylan Mitchell was one of the applicants.

11. Ms. Mitchell's application materials are included in Exhibit 12 to Hy-Vee's Suggestions in Support of its Motion for Summary Judgment ("Hy-Vee's Suggestions").

12. As illustrated in those materials, Ms. Mitchell had been the Floral Manager at the Jefferson City Hy-Vee for approximately two-and-a-half years at the time of her application for the Floral Manager at Belton. She also had other managerial and floral retail experience.

13. Chaundra Scott Keearns also applied, and her application materials are also included in Exhibit 12 to Hy-Vee's Suggestions. As illustrated in those materials, Ms. Scott Keearns was a Sales Manager at Aaron's but had previously held Floral Manager positions at two

2

different grocery stores.

14. After reviewing the applications, I reached out to the Store Director at the Jefferson City store (Rod Dolph) to get information about Ms. Mitchell. I also reached out to the Store Director at Lee's Summit #1 (Kory Robinson) to get information about Ms. LaPlant-Turner.

15. Mr. Dolph had very positive feedback about Ms. Mitchell and indicated she was an excellent Floral Manager.

16. Mr. Robinson told me that Ms. LaPlant-Turner was a very good designer and had good design experience but that her people skills were not great as far as dealing with customers and fellow employees.. Mr. Robinson also indicated Plaintiff had received different customer complaints, and she didn't necessarily work well with others.

17. I also spoke with Kaitlyn Sehgal about both Ms. Mitchell and Ms. LaPlant-Turner. Ms. Sehgal provided positive feedback on Ms. Mitchell but indicated she did not believe Ms. LaPlant-Turner had all the qualities and skills to be a successful Floral Manager.

18. Based on this feedback, I interviewed Ms. Mitchell and offered her the position. Ms. Mitchell ultimately declined the offer, indicating she decided she did not want to move.

19. As a result, I posted the position again. Ms. Scott Keearns (among others) applied again, and that time, I selected Chaundra Scott Keearns for the position.

20. I did not interview Ms. LaPlant-Turner at that time based on the feedback I had received from Mr. Robinson and Ms. Sehgal.

21. Unfortunately, Ms. Scott Kearns did not last long in the position. So I posted the position again. The records reflect the position was posted twice during the same time frame, and I reviewed all of the applications submitted in response to both postings.

22. In the first set of applications I received, Ms. LaPlant-Turner was the only one who

3

had any Floral experience. This is reflected in Exhibit 14 to Hy-Vee's Suggestions.

23. As reflected in Exhibit 15 to Hy-Vee's Suggestions, two additional people applied in response to the second posting in that same timeframe: Rajean Robertson and Vickie Conroy. Both had Floral experience but no management experience.

24. After receiving the applications, I spoke with Ms. Sehgal about Ms. Robertson. She told me she thought Ms. Robertson would make a good Floral Manager and provided feedback consistent with my own observations of Ms. Robertson.

25. As a result, I decided to interview Ms. Robertson.

26. Due to the overall weakness of the applicant pool, I decided to also interview Ms. LaPlant-Turner as well, despite the concerning feedback I had received about her.

27. As discussed in my deposition, Ms. LaPlant-Turner was very negative during her interview.

28. By contrast, during her interview, Ms. Robertson discussed her love of the department and her desire to lead it. She discussed how eager she was to learn and that she was willing to do whatever was needed to make the department succeed.

29. Ms. Robertson was upbeat and positive throughout the interview. She discussed her current knowledge of the department and her desire to grow and make a career with Hy-Vee.

30. Based on all the information I had about Ms. LaPlant-Turner and Ms. Robertson, I decided to offer the position to Ms. Robertson, which she accepted.

31. My decision had nothing at all to do with Ms. LaPlant-Turner's age or Ms. Robertson's age.

32. I do not make employment decisions based on age.

33. During my time as the Belton Store Director, I promoted Pam Lee to be the Aisles

4

On Line Manager at the Belton store.

34. I also hired Marty Krause to be the Produce Manager at the Belton store. Mr. Krause had previously been the Produce Manager at the Raytown store.

35. In addition, after becoming the District Store Director over the two Independence stores, I promoted Mark Weston to the Floral Manager position at Independence #1.

36. I do not know how old Ms. Lee, Mr. Krause, or Mr. Weston are, but they appear to be about the same age as Ms. LaPlant-Turner.

37. I have reviewed documents marked as Exhibits 12, 14, and 15 to Hy-Vee's Suggestions. They are true and accurate copies of application materials for the candidates who applied for various Floral Manager positions at the Belton store. These records are maintained in the regular course of Hy-Vee's business and are the records I reviewed when making decisions about who should fill the Floral Manager position at different times.

**PURSUANT TO 28 U.S.C § 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on December 7, 2023

Whitney Larson

5